**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ROBERT A. DOMBROSKY,

     Plaintiff,

     v.

ERIC C. STEWART,

     Defendant.

CIVIL ACTION NO. 3:10-1477

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is the Motion for Summary Judgment (Doc. 44) filed by Defendant Eric S. Stewart.  Plaintiff Robert A. Dombrosky asserts that Defendant, the Assistant Chief of Police for the Eastern Pike Regional Police Department, violated his constitutional rights by treating him differently from other similarly situated "members of the motoring public" after Plaintiff was involved in a single-vehicle motor accident on July 19, 2008.  Specifically, Plaintiff alleges that Defendant selectively enforced the motor vehicle and crimes codes and retaliated against him in violation of the First and Fourteenth Amendments.  Defendant has now filed a motion for summary judgment seeking dismissal of the equal protection and retaliation claims.  Because Plaintiff has failed to present evidence that he was treated differently from individuals that were "alike in all relevant aspects," and he has failed to demonstrate that Defendant took retaliatory action sufficient to deter a person of ordinary firmness from exercising his or her First Amendment rights, Defendant's motion for summary judgment will be granted.

### I. Factual Background

On September 30, 1998, Plaintiff began working as a police officer with the Westfall Township Police Department ("WTPD"). (*Def.'s Statement Material Facts*, "*Def.'s SMF*", ¶ 1.)  On July 16, 2007, when Plaintiff was a sergeant with the WTPD, he was charged with

criminal violations in Port Jervis, New York, that were unrelated to his job. (*Dombrosky Aff.*, ¶ 15.)  Thereafter, on or about September 6, 2007, Plaintiff agreed to take unpaid leave pending resolution of the Port Jervis charges. (*Id*. at ¶¶ 19-20.)  On February 19, 2008, one of the two Port Jervis charges against Plaintiff was dismissed and he was acquitted of the second charge. (*Id*. at ¶ 31.)  Plaintiff subsequently sought reinstatement to his position with the WTPD, which is the subject of a separate legal proceeding. *See Dombrosky v. Banach*, M.D. Pa. No. 3:09-CV-02579.

On July 19, 2008, Plaintiff attended a party at the home of Gary Mercer. (*Def.'s SMF*, ¶ 13.)  Plaintiff came and left the party on two separate occasions. (*Id*. at ¶ 14.)  While at the party, Plaintiff consumed multiple alcoholic beverages. (*Id*. at ¶¶ 15-16.)  The second time Plaintiff left the party, he drove himself in a truck. (*Id*. at ¶ 17.)

Approximately one-half to three-quarters of a mile from Mr. Mercer's home,  Plaintiff swerved off the road and struck a tree. (*Dombrosky Dep.*, 44:6-10.)  The parties dispute the reason this accident occurred, as Plaintiff claims he swerved to avoid a bear and Defendant asserts that Plaintiff drove off the road because he was intoxicated.

After the accident, Plaintiff had no cell phone service, so he walked back up the road in an attempt to get reception. (*Insurance Tr.*, 4.)  Once he got reception, he spoke to the police department and they came to the scene to file a report. (*Id*.)  Plaintiff also contacted his insurance carrier. (*Plaintiff's Counter-Statement of Facts*, "*Plf.'s CSF"*, ¶ 74.)  Plaintiff then walked home. (*Insurance Tr.*, 4)

According to the police report prepared by Sergeant David Zegarski, when he arrived at the scene, Plaintiff was not present. (*Zegarski Report*.)  Sergeant Zegarski observed Plaintiff's truck and noticed severe damage to the front of the vehicle and some damage to the passenger side. (*Id*.)  As a result, the vehicle was towed from the scene. (*Id*.)  Sergeant Zegarski and Officer Linehan then went to Plaintiff's residence to see if he was home. (*Id*.)

No one was at Plaintiff's home, however, when Sergeant Zegarski arrived. (*Id*.)

Thereafter, as Sergeant Zegarski's shift was ending, he contacted Defendant who was the on-call supervisor. (*Stewart Report*.) Defendant decided to come and assist Officer Kevin Nearing with the investigation and he proceeded to Plaintiff's residence. (*Id*.) When Defendant arrived, he spoke with Brooke Bogach, but Ms. Bogach advised Defendant that Plaintiff was not home. (*Id*.) Ms. Bogach then left the residence to search for Plaintiff. (*Id*.)

As Defendant left Plaintiff's house and returned to his vehicle, he heard Plaintiff's voice. (*Id*.) Defendant asked Plaintiff where he had been, and Plaintiff replied that he walked five miles home from the accident. (*Id*.) Plaintiff then welcomed Defendant into his home.

At that time, Defendant noticed Plaintiff was visibly intoxicated, (*id*.), as Plaintiff had a strong alcohol odor on his breath, he was walking with a sway, and his eyes were bloodshot. (*Stewart Dep.*, 185:6-16.) Plaintiff, however, disputes that he was intoxicated at the time. Defendant and Plaintiff engaged in a debate over the circumstances surrounding Plaintiff's accident, and Plaintiff alleged that another individual, who Plaintiff only identified as "Chris", was the operator of the truck at the time of the accident. (*Stewart Report*.) Officer Nearing then arrived at Plaintiff's home, and observed Plaintiff and Defendant talking in Plaintiff's kitchen. (*Id*.)

Shortly thereafter, Defendant and Officer Nearing went to Robert Grimila's house because Plaintiff informed Defendant that he was there prior to the accident. (*Id*.) Mr. Grimila denied that Plaintiff had been at his home. (*Id*.) Instead, Mr. Grimila told the officers that Plaintiff had returned to the party at Mr. Mercer's home in the evening when he was visibly intoxicated. (*Id*.)

Officer Nearing and Defendant then went to Mr. Mercer's home where they spoke with Mr. Mercer and Susan Konitsky. (*Id*.) Both Mr. Mercer and Ms. Konitsky stated that

Plaintiff was intoxicated at the party. (*Id*.)  Additionally, they stated that "Chris" could not have been driving the truck at the time of the accident because he was still at the party after Plaintiff left. (*Id*.)

Due to these events, Plaintiff was issued three (3) traffic citations and one (1) non-traffic citation. (*Def.'s SMF*, ¶ 32.)  Specifically, Plaintiff was charged with violating: (1) 75 Pa. Cons. Stat. Ann. § 3744, duty to give information and render aid; (2) 75 Pa. Cons. Stat. Ann. § 3745, accidents involving damage to unattended vehicle or property; (3) 75 Pa. Cons. Stat. Ann. § 3748, giving false reports; and (4) 18 Pa. Cons. Stat. Ann. § 5505, public drunkenness. (*Id*. at ¶ 33.) As a result of these charges, Defendant requested that Solicitor Mincer accompany him to the hearing against Plaintiff in front of the District Judge after Plaintiff threatened to go after the Commission. (*Plf.'s CSF*, ¶ 88.)  Defendant's request, however, was denied by the District Attorney's Office. (*Id*. at ¶ 89.) Ultimately, Plaintiff was found not guilty with respect to the public drunkenness charge, but he was adjudicated guilty of the traffic citations. (*Def.'s SMF*, at ¶ 34.)  Plaintiff appealed the guilty verdicts to the Court of Common Pleas of Pike County, Pennsylvania, but the appeal was denied. (*Id*. at ¶ 35.)

On August 15, 2009, a DUI checkpoint was conducted on Delaware Drive in Matamoras, Pennsylvania. (*Id*. at ¶ 38.)  Although Plaintiff lived on Delaware Drive, he was not stopped at the checkpoint nor did he personally observe this checkpoint. (*Id*. at ¶ 39.)

## II. Procedural History

Based on the foregoing events, Plaintiff commenced this action against Assistant Police Chief Stewart on July 16, 2010. (Doc. 1.)  On September 16, 2010, Plaintiff filed an Amended Complaint against Defendant asserting a violation of the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. (Doc. 9.) In particular, Plaintiff asserted that Defendant selectively enforced the motor vehicle and criminal codes with

respect to him. (*Id*.)

Defendant subsequently sought dismissal of Plaintiff's Amended Complaint for failure to state a claim upon which relief could be granted. (Doc. 12)  On November 4, 2010, Defendant's motion to dismiss was denied because Plaintiff pled sufficient facts to state a selective enforcement claim. (Doc. 16.)

Defendant subsequently sought reconsideration of the Memorandum and Order on the basis that the Court erred in analyzing Plaintiff's claim as a selective enforcement claim as opposed to a "class of one" claim. (Doc. 17.)  Although Defendant's motion for reconsideration was granted and Plaintiff's claim was examined under the "class of one" theory, Defendant's motion to dismiss was still denied as the Amended Complaint adequately stated a "class of one" claim. (Doc. 21.) Importantly, in granting reconsideration, it was stated that "[w]hile the Court is not completely convinced that it was obligated to apply the 'class of one' standard to Plaintiff's claim, it will err on the side of caution and evaluate the claim under that standard." (*Id*. at 4.)

The parties then proceeded to discovery on Plaintiff's claim.  And, on April 18, 2012, with the consent of Defendant, Plaintiff filed a Second Amended Complaint asserting a First Amendment retaliation claim in addition to his equal protection claim. (Doc. 40.)

After filing an Answer with Affirmative Defenses to Plaintiff's Second Amended Complaint, Defendant filed the instant motion for summary judgment. (Doc. 40.)  Now, as Defendant's motion has been fully briefed, it is ripe for disposition.

### III. Discussion

**A.    Legal Standards**

**1.    Summary Judgment Standard**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(a).  "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248.  An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*. Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* 2D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2727 (2d ed.1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).  Once the moving party has satisfied its initial

burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256–57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990).

"To prevail on a motion for summary judgment, the non-moving party must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed.R.Civ.P. 56(e)).   "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Id.* (quoting *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**2.    Section 1983**

Plaintiff's claims against Defendant are asserted pursuant to 42 U.S.C. § 1983. Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any citizen ... or any other person ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."   Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n. 9, 119 S. Ct. 1624, 143 L. Ed. 2d

7

882 (1999) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979)).  "To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, (1) acting under color of law, (2) violated the plaintiff's federal constitutional or statutory rights, (3) and thereby caused the complained of injury." *Elmore v. Cleary*, 299 F.3d 279, 281 (3d Cir. 2005) (citing *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998)).

## B.     The Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment directs that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  Plaintiff's first cause of action asserts that Defendant violated his equal protection rights by treating him differently from other "members of the motoring public." The parties dispute the nature of the equal protection claim asserted by Plaintiff.  Defendant argues that Plaintiff is pursuing a "class of one" claim because he has not established that he is a member of any protected class. (Doc. 58, 3.)  Conversely, Plaintiff asserts that the claim is one for "selective enforcement" which is "the appropriate cause of action to vindicate plaintiff's rights under the Equal Protection Clause against defendant, an Assistant Chief of Police who misused his office for personal animus." (Doc. 56, 12.)   Before addressing the merits of Defendant's summary judgment motion, it is necessary to resolve the parties' dispute over the type of equal protection claim asserted by Plaintiff.

### 1.     "Class of One"

In *Village of Willowbrook v. Olech*, 528 U.S. 562, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000), the Supreme Court articulated the "class of one" theory of equal protection. Under a "class of one" claim, a plaintiff asserts that "he has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." *Id*. at 564, 120 U.S. 1073.  According to the Third Circuit, to prove a "class of

one" claim, a plaintiff must establish that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

As to the first element, "'[p]ersons are similarly situated under the Equal Protection Clause when they are alike in all relevant aspects.'" *Mun. Revenue Servs., Inc. v. McBlain*, 347 F. App'x 817, 825 (3d Cir. 2009) (quoting *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008)); *see also Perano v. Twp. of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011). The Second Circuit has noted that this requires a "class of one" plaintiff to "show an extremely high degree of similarity between themselves and the persons to who they compare themselves." *Hankin Family P'ship v. Upper Merion Twp.*, No. 01-1622, 2012 WL 43610, at *11 (E.D. Pa. Jan. 6, 2012) (quoting *Curbside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)).

Moreover, the rational basis requirement of a "class of one" claim "imposes a high burden, requiring 'different treatment [that] is irrational and wholly arbitrary.'" *Highway Materials, Inc. v. Whitemarth Twp.*, 386 F. App'x 251, 259 (3d Cir. 2010) (quoting *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 286 (3d Cir. 2004)). Thus, "these challenges fail when 'there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Id.* (quoting *Heller v. Doe*, 509 U.S. 312, 320, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993)).

Defendant argues that Plaintiff fails to establish an equal protection claim because: (1) Plaintiff has no evidence to support his burden of demonstrating differential treatment from similarly situated individuals; (2) Plaintiff cannot establish that Defendant intentionally treated him differently; and (3) Defendant had a rational basis for his treatment of Plaintiff. (Doc. 45.)

### 2.     Selective Enforcement

In contrast to Defendant, Plaintiff characterizes his equal protection claim as one for selective enforcement. (Doc. 56.)   "Selective enforcement of a facially valid law is unconstitutional under the Equal Protection Clause." *Adams v. Officer Selhorst*, 449 F. App'x 198, 203 (3d Cir. 2011) (citing *Holder v. City of Allentown*, 987 F.2d 188, 197 (3d Cir. 1993)).   In the Third Circuit, to establish a selective enforcement claim, Plaintiff must demonstrate 1) that he was treated differently from other similarly situated individuals, and "2) that this selective treatment was based on an 'unjustifiable standard, such as race, or religion, or some other arbitrary factor, . . . or to prevent the exercise of a fundamental right.'" *Dique v. N.J. State Police*, 603 F.3d 181, 184 n.5 (3d Cir. 2010) (quoting *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (citing *Holder*, 987 F.2d at 197)).   "[T]o maintain an equal protection claim of this sort, [Plaintiff] must provide evidence of discriminatory purpose, not mere unequal treatment or adverse effect." *Jewish Home of E. Pa. v. Ctrs. for Medicare & Medicaid Servs.*, - - - F.3d - - - , 2011 WL 8626857, at *3 (3d Cir. Feb. 11, 2011) (citing *Snowden v. Hughes*, 321 U.S. 1, 8, 64 S. Ct. 397, 88 L. Ed. 497 (1944)).   Thus, "[Plaintiff] must show that the 'decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects." *Id.* (quoting *Wayte v. United States*, 470 U.S. 598, 610, 105 S. Ct. 1524, 84 L. Ed. 2d 547 (1985)).

As "[a]n essential element of a claim of selective treatment under the Equal Protection Clause is that the comparable parties were 'similarly situated,'" *Startzell*, 533 F.3d at 203 (citing *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005), "[t]o survive summary judgment on the first element of the selective enforcement claim, Plaintiff must "identify through specific facts . . . similarly situated suspects . . . [that] violated the . . . law and were not subject to the law's enforcement." *McCann v. Winslow Twp.*, No. 06-3189,

2007 WL 4556964, at *10 (D. N.J. Dec. 20, 2007) (citing *White v. Williams*, 179 F. Supp.

2d 405, 418 n.5 (D. N.J. 2002)).  "*Persons are similarly situated under the Equal Protection*

*Clause when they are alike 'in all relevant aspects.*'" *Startzell*, 533 F.3d at 203 (quoting

*Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S. Ct. 2326, 120 L. Ed. 2d (1992)) (emphasis

added).  And, where the plaintiff does not allege that the differential treatment occurred

because of his or her status in a protected class, or that the treatment prevented the

exercise of a constitutional right, the plaintiff must present evidence of "a malicious or bad

faith intent to injure." *Homan v. City of Reading*, 15 F. Supp. 2d 696, 702 (E.D. Pa. 1998)

(quoting *Zahra v. Town of Southold*, 48 F.3d 674, 684 (2d Cir. 1995) (citing *FSK Drug Corp.*

*v. Perales*, 960 F.2d 6, 10 (2d Cir. 1992); *LeClair v. Saunders*, 627 F.2d 606, 608 (2d Cir.

1980))).

> Plaintiff asserts that summary judgment should be denied as to the equal protection

claim because he has presented sufficient evidence in support of his claim.  Plaintiff

contends that the following evidence demonstrates that Defendant treated him differently

from other similarly situated "members of the motoring public" and selectively enforced the

motor vehicle and crimes codes:

> > Defendant went to plaintiff's house while off-duty within three hours of the alleged offense, at about 1:10 a.m., and tried to arrest plaintiff for drunk driving; he assigned himself to the investigation even though the matter was being routinely handled by a subordinate officer, Sgt. Zegarski; defendant either failed to obtain the facts from his subordinates or willfully disregarded them; defendant spent a much greater amount of time, effort, and resources of himself and other members of the department than would ordinarily be spent on such a minor matter; he charged plaintiff with false reports based on alleged oral statements at plaintiff's home; he charged plaintiff with public drunkenness at a time and place when and where plaintiff was alone; he caused the Commission to request a special prosecutor in district justice court to prosecute summary offenses; and, defendant directed that a DUI check point be set up near plaintiff's house for the purpose of entrapping plaintiff.

(Doc. 56, 12-13.)  In addition, Plaintiff asserts that this differential treatment was based on

arbitrary factors- Defendant's desire to block Plaintiff's return to the police force and his

personal animus against Plaintiff.

**3.      Analysis**

According to Defendants, because Plaintiff does not allege that he is a member of any protected class, he "has not brought a claim for traditional selective enforcement action, but rather a 'class of one' selective enforcement action." (Doc. 58, 3.)   Essentially, Defendant's position appears to be that, in light of *Olech*, an equal protection claim asserting discriminatory enforcement of a facially valid law by an individual that is not a member of a protected class must be brought as a "class of one" claim.   Although Defendant raises an interesting argument, he fails to specifically identify any controlling Third Circuit precedent which expressly holds that a selective enforcement claim that does not implicate a suspect class or fundamental right must be brought as a "class of one" claim.

Yet, while this issue has not been thoroughly addressed in this Circuit, courts in the Second Circuit have repeatedly stated that "[a] plaintiff who does not claim to be a member of a constitutionally protected class may bring an Equal Protection claim on one of two theories: selective enforcement or 'class of one.'" *Missere v. Gross*, 826 F. Supp. 2d 542, 560 (S.D.N.Y. 2011) (citing *Cobb v. Pozzi*, 363 F.3d 89, 109-10 (2d Cir. 2004)); *see also Bunn v. City of Poughkeepsie*, No. 10-2297, 2012 WL 1621563, at *3 (S.D.N.Y. May 9, 2012); *Minasi v. City of Utica*, No. 10-0975, 2011 WL 6842988, at *5 (N.D.N.Y. Dec. 29, 2011); *TZ Manor, LLC v. Daines*, 815 F. Supp. 2d 726, 752 (S.D.N.Y. 2011); *but see Gusler v. City of Long Beach*, 823 F. Supp. 2d 98, 135 (E.D.N.Y. 2011) ("because Plaintiff does not allege that he was a member of a protected class, his claim must be interpreted as a class of one claim").   The Second Circuit has indicated that differential treatment without a rational basis states a "class of one" claim, while differential treatment motivated by an intent to discriminate on an impermissible basis is a selective enforcement claim. *See Casciani v. Nesbitt*, 392 F. Zpp'x 887, 888 (2d Cir. 2010) (citing *Cobb*, 363 F.3d at 110;

12

*Zahra v. Town of Southfold*, 48 F.3d 674, 683 (2d Cir. 1995)).[1]

Here, because Defendant has not identified any controlling authority that expressly

prohibits an individual from bringing a selective enforcement claim (as opposed to a "class

of one" claim) when the plaintiff is not a member of a suspect class, but other district courts

have analyzed equal protection claims under a selective enforcement theory even when the

plaintiff is not a member of a protected class, Plaintiff's claim will be analyzed as one for

---

[1]    Among the district courts of the Second Circuit that treat these claims separately, however, "there is a disagreement within the Second Circuit regarding the precise standard for determining whether comparators are similarly situated for each type of these claims." *Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 815 F. Supp. 2d 679, 693 (S.D.N.Y. 2011). "Courts that have found 'similarly situated' has the same meaning in selective enforcement and 'class of one' contexts have stated that 'the standard for determining whether another person's circumstances are similar to the plaintiff's must be . . . whether they are *prima facie* identical.'" *Gentile v. Nulty*, 769 F. Supp. 2d 573, 580 (S.D.N.Y. 2011) (quoting *Kamholtz v. Yates Cnty.*, No. 08-6210, 2008 WL 5114964, at *5 (W.D.N.Y. Dec. 3, 2008)). The level of similarity, in these cases, must be "extremely high," and the plaintiff must establish:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

*Id.* (quoting *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010)). Alternatively, "courts that have distinguished between the meaning of 'similarly situated' in selective enforcement and 'class of one' claims have applied a standard that appears to be somewhat less demanding in the selective enforcement context." *Id.* (citing *Frank Sloup & Crabs Unlimited, LLC v. Loeffler*, 745 F. Supp. 2d 115, 130 (E.D.N.Y. 2010)). In those cases, the plaintiff must show "that plaintiff and comparators were 'similarly situated in all material respects,' or that 'a prudent person, looking objectively at the incidents, would think them roughly equivalent.'" *Missere*, 826 F. Supp. 2d at 561 (quoting *Vassallo v. Lando*, 591 F. Supp. 2d 172, 184 (E.D.N.Y. 2008); *Yajure v. DiMarzo*, 130 F. Supp. 2d 568, 572 (S.D.N.Y. 2001)).

selective enforcement.[2]   Thus, for Plaintiff to survive summary judgment, he must demonstrate that he was treated differently from similarly situated individuals and that this differential treatment was based on an arbitrary factor. *See Dique*, 603 F.3d at 184 n.5.

Defendant's motion for summary judgment will nevertheless be granted because, as identified by Defendant, Plaintiff has failed to demonstrate that he was treated differently from other similarly situated individuals.  As noted, the Third Circuit has defined "similarly situated" in the context of a selective treatment claim under the Equal Protection Clause as people that are "alike 'in all relevant aspects.'" *Startzell v. City of Phila.*, 533 F.3d 138, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10, S. Ct. 112, 2326, 120 L. Ed. 2d 1 (1992)).

In this case, Plaintiff has failed to establish that he was treated differently than individuals that were alike in all relevant aspects.  In particular, Plaintiff asserts that he was treated differently from "other similarly situated members of the motoring public." (Doc. 56, 12.)  Plaintiff does not supports this conclusion with evidence of record.  Instead, he merely sets forth the alleged conduct of Defendant which he claims to be discriminatory.  At summary judgment, however, once Defendant identifies the absence of a genuine issue of material fact as to Plaintiff's equal protection claim, Plaintiff has the "burden of establishing that [Defendant] purposefully treated [him] differently from similarly situated [individuals]." *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*,587 F.3d 176, 196 (3d Cir. 2009).

In *Chambers*, the plaintiff asserted that the defendant intentionally discriminated against disabled students. *See id*.  The defendant subsequently sought summary judgment on the basis that the plaintiff failed to conduct discovery to determine if he was treated

---

[2]       As Plaintiff specifically states that he did not assert a "class of one" claim, the claim will not be analyzed under this theory.

differently than other similarly situated students. *See id*. at 196-97.  The Third Circuit stated that the defendant's summary judgment motion sought to highlight the deficiencies in the plaintiff's equal protection claim by pointing to the absence of a genuine issue of material fact. *See id*. at 197.  In response to the defendant's motion, the plaintiff attempted to "rebut the [defendant's] argument with no more than a conclusory statement that [the student] was 'treated differently than other disabled children to whom the school district has met its obligations.'" *Id*.  The Third Circuit affirmed the district court's grant of summary judgment to the defendant and noted that "[o]nce the [defendant] met its initial burden, it was incumbent on the [plaintiffs] to show the existence of a genuine issue of material fact.  They plainly failed to do so." *Id*.  Thus, the court held that the plaintiff's conclusory effort to rebut the defendant's summary judgment argument "standing alone, was deficient, as the record [did] not reflect that the [plaintiff] presented any competent evidence in support of the claim, as they were required to do." *Id*.

The deficiency of the evidence presented by Plaintiff is largely similar to that emphasized in *Chambers*.  Here, after Defendant argued that Plaintiff could not identify any similarly situated individuals that were treated differently than him, Plaintiff simply responded with the conclusory statement that "similarly situated members of the motoring public" were treated differently.  Like the Third Circuit held in *Chambers*, however, this statement, combined with the evidence of record, is insufficient to satisfy Plaintiff's burden of establishing differential treatment between persons that are alike in all relevant aspects.

In contrast to this case and *Chambers*, in *Andrews v. Bureau of Codes Admin. Office*, No. 08-1669, 2012 WL 610333, (M.D. Pa. Feb. 24, 2012), the plaintiff offered sufficient evidence to withstand the defendants' motion for summary judgment on her selective enforcement claim.  In *Andrews*, the plaintiff asserted that the defendants treated her adversely and differently than similarly situated, non-minority property owners and other

owners who did not file complaints against the Bureau of Codes. *See id*. at *8.  In opposition to the defendants' summary judgment motion, the plaintiff: (1) specifically identified several nearby properties owned by non-complaining or non-minority individuals that were in a condemnable state for ten or more years without prosecution; (2) attached pictures and condemnation orders associated with the properties; and (3) identified eight other minority property owners who were not given the same pre-condemnation notices and allowances for time to comply as non-complaining, non-minority owners. *See id*.  Based on that evidence, the district court concluded that the plaintiff "offered more than sheer speculation that she and others were treated differently, and by specifically identifying allegedly similarly-situated individuals and comparing her, and others' treatment by Defendants, Plaintiff has met her burden at this stage with regard to this claim." *Id*.

Unlike the plaintiff in *Andrews*, Plaintiff does not provide any evidence of similarly situated individuals that were treated differently.  Indeed, the only evidence of record relied upon by Plaintiff to support his claim that he was treated differently than other "similarly situated members of the motoring public," is his own affidavit. (*Dombrosky Aff.*, ¶¶ 76, 80-89.)  Even still, Plaintiff does not compare the circumstances of his accident, and the subsequent investigation of the accident, with any other accidents involving other "members of the motoring public."  For example, Plaintiff has not identified how the police treated other accidents involving a single vehicle where the operator left the scene of the accident before the police arrived and walked home to his or her house after admittedly drinking multiple alcoholic beverages during the course of the afternoon and evening.  Without such a comparison, outside of conjecture and speculation, Plaintiff has offered no evidence that he is similar to other "members of the motoring public" in all relevant aspects.  Instead, Plaintiff has merely hypothesized that Defendant would not conduct such an investigation and prosecution of other "members of the motoring public" without concrete evidence to

16

substantiate this suspicion to demonstrate that Defendant previously faced this situation and proceeded differently in those cases.

Similarly, in this case, Defendant and his subordinates were able to readily identify the vehicle as being owned by Plaintiff.  Yet, Plaintiff has provided no evidence that Defendant and his subordinates ever before encountered an accident scene where they could identify the owner of the vehicle but not locate the owner at the accident site.  Thus, Plaintiff has simply surmised that he was treated differently than other "members of the motoring public."  In that regard, as Plaintiff has failed to present evidence that these other motorists were like him in all relevant aspects, Plaintiff has not satisfied his burden to survive summary judgment.  Defendant's motion will therefore be granted.[3]

Moreover, it is also worth noting that Plaintiff was actually adjudicated guilty as to the summary traffic offenses.  While Plaintiff is correct that "guilty pleas to summary offenses and other minor matters are generally inadmissible in subsequent civil proceedings arising out of the same incident ," *Stumpf v. Nye*, 950 A. 2d 1032, 1040 (Pa. Super. 2008), "the policy behind this rule is that convenience, rather than guilt, often controls the defendant's trial technique." *Id.*  According to the Commonwealth Court of Pennsylvania,  a conviction to a summary offense may be admissible despite this general statement of the law based on the specific facts of a case in circumstances where: (1) the defendant appealed the summary convictions and received a *de novo* hearing which demonstrates that the party

---

[3]     And, if Plaintiff's equal protection claim was analyzed as a "class of one" claim, Defendant's motion for summary judgment would still be granted because the Third Circuit has applied the "alike in all relevant aspects" standard to "class of one" claims. *See, e.g., Perano v. Twp. of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011); *Mun. Revenue Servs., Inc. v. McBlain*, 347 F. App'x 817, 825 (3d Cir. 2009).  Since this standard is the same as that applied to selective enforcement equal protection claims, dismissal of a selective enforcement claim on the "similarly situated" element would mandate dismissal of a "class of one" claim as to this element as well.

"had taken advantage of its day in court"; or (2) "the parties in both the criminal proceeding and the civil proceeding are the same." *Richland Twp. v. Prodex, Inc.*, 634 A.2d 756, 764 (Pa. Cmwlth. 1993). In this case, Plaintiff was found guilty of the three traffic citations and he appealed the guilty verdicts to the Court of Common Pleas of Pike County, Pennsylvania, where he received a *de novo* hearing. (*Def.'s SMF*, ¶¶ 34-35.) Due to this finding of guilt, as Plaintiff vigorously defended and appealed these verdicts to the Court of Common Pleas, Plaintiff would be precluded from asserting that he was in fact innocent of these charges and he would thus be unable to establish that Defendant "selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects." *Jewish Home of E. Pa. v. Ctrs. for Medicare & Medicaid Servs.*, - - - F.3d - - - , 2011 WL 8626857, at *3 (3d Cir. Feb. 11, 2011) (quoting *Wayte v. United States*, 470 U.S. 598, 610, 105 S. Ct. 1524, 84 L. Ed. 2d 547 (1985)).

Accordingly, as Plaintiff has failed to establish the necessary elements of his selective enforcement claim, Defendant's claim that he is immune from suit pursuant to the doctrine of qualified immunity need not be addressed. Defendant's motion for summary judgment dismissing the equal protection claim will be granted.

**C.     The First Amendment Retaliation Claim**

As noted, Plaintiff originally commenced this action on July 16, 2010 and he subsequently filed an Amended Complaint on September 16, 2010. After the case proceeded to discovery, Plaintiff filed a Second Amended Complaint, on April 18, 2012, asserting, for the first time, a First Amendment retaliation claim. Plaintiff argues that Defendant violated his First Amendment rights by requesting that Solicitor Mincer accompany him to the hearing regarding Mr. Dombrosky's criminal case because he made comments about going after the Commission. (Doc. 56, 22.) Defendant asserts that summary judgment should be granted as to this claim because the claim is barred by

Pennsylvania's two-year statute of limitations as the claim does not relate back to the Complaint's initial filing. And, even if the claim does relate back, Defendant argues that Plaintiff has failed to set forth a valid First Amendment retaliation claim.

The First Amendment of the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of the speech, or of the press; or the right of the people peaceably to assemble. . . ." U.S. Const. amend. I. To establish a First Amendment retaliation claim, a plaintiff must prove: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). "'The key question in determining whether a cognizable First Amendment claim has been stated is whether the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" *Id*. (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)). Thus, "[t]he effect of the alleged conduct on the employee's freedom of speech 'need not be great in order to be actionable,' but it must be more than *de minimis*." *McKee*, 436 F.d at 170 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)).

Defendant's motion for summary judgment dismissing the First Amendment claim will be granted. First, Plaintiff's First Amendment claim is barred by the relevant statute of limitations and the claim does not relate back to the Complaint's initial filing. Rule 15(c) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a]n amendment relates back to the date of the original pleading when: . . . (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out- or attempted to be set out- in the original pleading; . . ." Fed. R. Civ. P. 15(c)(1)(B). "Rule

15(c) is premised on the notion that a party is not entitled to the protection of the statute of limitations based upon the later assertion by amendment of a claim or defense that arises out of the same conduct, transaction, or occurrence set forth in the timely filed original pleading." *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004) (citing 6A Wright, Miller & Kane, *Federal Practice & Procedure* § 1496 (2d ed. 1990)). "[A]pplication of Rule 15(c) involves a search for a common core of operative facts in the two pleadings. As such, the court looks to whether the opposing party has had fair notice of the general fact situation and legal theory upon which the amending party proceeds." *Id*. (citing *Michelsen v. Penney*, 135 F.2d 409, 416-17 (2d Cir. 1943)).

Here, in Plaintiff's brief in opposition to Defendant's summary judgment motion, he asserts that Defendant retaliated against him by requesting Solicitor Mincer accompany him to Defendant's criminal hearing because he threatened to go after the Commission. (Doc. 56, 22.) However, in reviewing Plaintiff's original Complaint, there are no averments that Defendant made such a request, or that Plaintiff even made any comments about going after the Commission. (Doc. 1.) Indeed, these "core operative facts" of the First Amendment claim- the threat to sue the Commission and Defendant's request for the Solicitor to accompany him to a hearing- are not even implicitly referenced in Plaintiff's initial pleading. In fact, outside of one allegation in the original Complaint that Plaintiff was actively seeking restoration to duty as of July 19, 2008, (Doc. 1, ¶ 20), the Complaint does not refer to Plaintiff's dispute with the Commission. As such, Defendant was not on fair notice of the legal theory on which Plaintiff is now proceeding on his First Amendment claim. Plaintiff's retaliation claim therefore does not relate back to the filing of the original Complaint. And, as the last event complained of by Plaintiff against Defendant occurred on August 15, 2009 and was not asserted until April 18, 2012, it is barred by the statute of limitations. *See, e.g., Gilarno v. Borough of Freedom*, 462 F. App'x 177, 180 (3d Cir. 2012)

(Pennsylvania's two year statute of limitations applies to First Amendment retaliation claim asserted pursuant to 42 U.S.C. § 1983).

Second, even if Plaintiff's retaliation claim related back to the initial pleading, Plaintiff has failed to establish the necessary elements of the claim.  As stated, a First Amendment retaliation claim requires the plaintiff to establish that the defendant's conduct had more than a *de minimis* impact on the plaintiff's freedom of speech.  *See McKee*, 436 F.3d at 170. In this case, the only adverse action alleged by Plaintiff is that Defendant requested Solicitor Mincer accompany him to a hearing.  This act alone is insufficient to deter a person of ordinary firmness from exercising his First Amendment rights. *See id*.  In fact, the Third Circuit has recently affirmed the dismissal at summary judgment of a First Amendment retaliation claim that is largely similar to the claim advanced by Plaintiff. *See Campbell v. West Pittston Borough*, No. 11-3940, 2012 WL 3329655, at *1-*2 (3d Cir. Aug. 15, 2012). In *Campbell*, the plaintiff asserted that he was retaliated against by council members when they questioned him about the filing of a prior lawsuit.  *See id*.  In affirming the dismissal of the retaliation claim, the Third Circuit found "that the two isolated incidents in which council members spoke with Campbell about his prior lawsuit are insufficient to support his retaliation claim." *Id*.  And, because these "few brief interactions with council members" would be insufficient to have deterred a person of ordinary firmness from exercising his First Amendment rights, the dismissal of the retaliation claim was affirmed.

The same result is mandated in this case.  The sole allegation against Defendant here is that he requested the Solicitor to accompany him to a hearing (with the request ultimately being denied) after Plaintiff threatened legal recourse against Defendant and his employer.  As this activity alone would not deter an individual from commencing a legal action or engaging in other protected conduct, Plaintiff has failed to establish adverse action sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.

 Accordingly, Defendant's motion for summary judgment dismissing the retaliation claim will be granted.

### IV. Conclusion

For the above stated reasons, Defendant's motion for summary judgment will be granted.

An appropriate order follows.


August 27, 2012                                    /s/ A. Richard Caputo
Date                                                  A. Richard Caputo
                                                      United States District Judge